**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re, | C/A No. 16-01667-DD |
| Eva Laura Anne Jowers, | |
| Debtor. | Adv. Pro. No. 16-80101-DD |
| Eva Laura Anne Jowers, | Chapter 13 |
| Plaintiff, | **ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| Midland Funding, LLC and Midland Credit Management, Inc., | |
| Defendants. | |

This matter concerns a proof of claim and the requirements of Fed. R. Bankr. P. 3001(c)(2)(A).  It is before the Court on a motion for summary judgment filed by defendants Midland Funding, LLC and Midland Credit Management, Inc. (collectively, "Defendants") on March 27, 2017 [Docket No. 34] and a motion for summary judgment filed by plaintiff Eva Laura Anne Jowers ("Plaintiff") on April 3, 2017 [Docket No. 39].  Plaintiff filed an objection to Defendants' motion on April 3, 2017 [Docket No. 38], and Defendants filed an objection to Plaintiff's motion on April 18, 2017 [Docket No. 43].  A hearing was held on both motions on May 11, 2017.  At the conclusion of the hearing, the Court took the matter under advisement.  The Court now issues this Order.

**BACKGROUND**

1.    Plaintiff, an individual, filed her chapter 13 bankruptcy case on April 4, 2016.

2.    Plaintiff filed her schedules on April 8, 2016 [Docket No. 6].  On Schedule F Plaintiff listed a debt owed to Syncb/Belk for credit card purchases in the amount of $486.00.

Plaintiff states the amount was based on information in her credit report. Plaintiff did not note a dispute as to this claim in her schedules.

3.      Midland Funding, LLC filed a proof of claim in Plaintiff's chapter 13 case on May 19, 2016.[1] The proof of claim indicates that Midland Funding, LLC acquired the claim from Synchrony Bank. The amount of the claim is listed as $486.55. Under the question on the proof of claim form which asks, "Does this amount include interest or other charges?" the "No" option is checked. Attached to the proof of claim is an Account Summary, which indicates that the total claim amount is $486.55, the amount of unsecured principal is $486.55, and the interest due is $0.00.

4.      Defendants purchased the debt owed by Plaintiff from Synchrony Bank on April 19, 2016, pursuant to a Forward Flow Receivables Purchase Agreement between Synchrony Bank and Midland Funding, LLC, dated July 21, 2015.[2]

5.      Although the debt was transferred soon after Plaintiff's bankruptcy case was filed, according to Defendants (and not disputed by Plaintiff), the triggering event for the transfer was Synchrony Bank's charge-off of the debt. Defendants' proof of claim indicates that the charge-off date for the debt was March 14, 2016. The date of the last payment on the account was August 12, 2015.

6.      Plaintiff filed this adversary proceeding on July 7, 2016. Plaintiff's complaint asserts that Defendants' proof of claim inaccurately characterizes the debt because it incorrectly states that no pre-petition interest, costs, fees, and other charges were included in the claim amount.

---

[1] The proof of claim is signed by a bankruptcy specialist for Midland Credit Management, Inc. and indicates that notices and payments should be sent to "Midland Credit Management, Inc. as agent for Midland Funding LLC."
[2] *See* Defendants' Exhibit J in support of Defendants' Motion for Summary Judgment.

Plaintiff's complaint requests that Defendants' claim be disallowed, and also seeks attorney fees and costs, and "other appropriate relief."

7.      Defendants filed a motion to dismiss the adversary proceeding on August 22, 2016 [Docket No. 5], which was amended on August 24, 2016 [Docket No. 7] and August 25, 2016 [Docket No. 8].  Plaintiff filed an objection to Defendants' motion to dismiss on September 5, 2016 [Docket No. 11].  A hearing was held on the motion on October 5, 2016.

8.      On November 10, 2016, the Court entered an Order granting Defendants' motion to dismiss in part and denying it in part.  The Court found that an 11 U.S.C. § 502(b) disallowance of Defendants' proof of claim is not an available remedy under Federal Rule of Bankruptcy Procedure 3001(c)(2)(D) and therefore granted Defendants' motion to dismiss as to Plaintiff's request for disallowance of Defendants' claim.  The Court denied the motion to dismiss as to the issue of whether Defendants complied with Rule 3001 in characterizing the entire debt as principal and ordered Defendants to file an answer within fourteen (14) days.  Defendants filed their answer on November 23, 2016 [Docket No. 26].

9.      Defendants took a deposition of Plaintiff on March 7, 2017, a transcript of which was admitted into evidence in connection with Defendants' motion for summary judgment.  The following exchange occurred during the deposition:

> Q [Defendants' counsel]:  Okay.  So now you understand that your account can exceed your credit limit?
> A [Plaintiff]:  Yes, sir.
> Q:  So based on that, if you understand that the amount you owe can indeed exceed your credit limit, do you still dispute the amount of the claim filed in this case?
> A:  No, sir.
> . . .
> Q:  Now, on paragraph 21 of your complaint, which is on page 4, you allege that because the proof of claim that Midland filed on the Belk credit card debt was wrong that it was misleading and deceptive.  However, you've just said that you don't dispute the amount of the debt.

So based on that, do you still believe that Midland's claim was misleading or deceptive?

A: No, sir.

. . .

Q:  . . . We asked you to admit that you've suffered no emotional damages as a result of Midland filing its proof of claim in this case.  However, you denied that, and you said that you've been worried about this situation, and you said that I would be worried about this situation.

Now, do you still claim that you've suffered emotional damages?

A: I don't remember this.

Q: How have you been worried based on what Midland's proof of claim was?

A: Because, like I said, I didn't do that amount.

Q: Okay.  But now you've admitted –

A: Yeah, because you – I mean, we're sitting – did the thing plus when the Midland was coming, I didn't even know what they was.  Okay?  It didn't come to me like this, as Midland.

Q: How did it come to you?

A: As Belk Rewards.

Q:  Okay.  So when you say that you've been worried about this situation, have you generally just been worried about bankruptcy?

A: No.

Q: Okay.  Tell me what you've been worried about.

A:  I was worried about this Belk because I didn't know the amount that I had to pay.

Q: Okay.  Did you ever see a doctor based on this?

A: No.

Q: Okay.  Did you have to take any kind of medication because of –

A: About that claim?

Q: Uh-huh.

A: No.

Q:  Okay.  Well, can you tell me about what kind of symptoms you had because you were so worried about this.

A: I didn't have any symptoms.

Q: I'm sorry?  What was that?

A: I don't have any symptoms.

Q: You didn't have any symptoms?

A: Not as I know of, but it worried me, like I said.  But I didn't have any symptoms.

10.    Defendants also submitted an expert report of Patti Joyner Blenden in support of their motion for summary judgment.  Ms. Blenden has significant experience in the banking industry and is knowledgeable about matters involving regulatory compliance by financial institutions.

4

11.     Ms. Blenden concludes in her report that to comply with applicable federal regulations, including the Truth in Lending Act and Regulation Z, a debt buyer need not provide a separate statement of interest in connection with a debt purchased from the original creditor. Ms. Blenden states that for the debt buyer, the entire outstanding balance at the time of the charge-off by the original creditor is correctly characterized as the principal balance.  Accordingly, Ms. Blenden concludes, Defendants' "claims are correctly filed for the amount equivalent to the balance outstanding at charge-off.  As a result, Midland's claims do not include any interest charges."

12.     Defendants' are in possession of documents detailing the principal, interest, and other charges that make up the Synchrony Bank debt.

13.     Plaintiff's chapter 13 bankruptcy case was dismissed for failure to make her chapter 13 plan payments on February 22, 2017.  Plaintiff filed another chapter 13 bankruptcy case on April 19, 2017.  In her schedules filed in her new chapter 13 case, Plaintiff again lists a debt owed to Syncb/Belk in the amount of $486.00.

## LEGAL STANDARD

Summary judgment is appropriate when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials … show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c) (made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The role of the judge in deciding summary judgment is "not himself to weigh the evidence … but to determine whether there is a genuine issue for trial." *Anderson,* at 249.

The party requesting summary judgment must demonstrate the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This initial burden requires the moving party to identify those portions of the record that it believes demonstrate the absence of a genuine dispute. *Celotex*, 477 U.S. at 323; *see also Anderson*, 477 U.S. at 249. The nonmoving party must then produce "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed R. Civ. P. 56(e). If the nonmoving party fails to provide evidence supporting an essential element of its case, then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. The Court must view the facts and draw reasonable inferences in a light most favorable to the non-moving party. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted).  All parties contend there are no genuine issues for trial.

## DISCUSSION

1. Compliance with Federal Rule of Bankruptcy Procedure 3001

A "claim" is defined in the Bankruptcy Code as a "right to payment."  11 U.S.C. § 101(5)(A).  "Congress intended by this language to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).  In order to meet the Bankruptcy Code's definition of "claim," an obligation does not actually have to be enforceable.  *See Midland Funding, LLC v. Johnson*, 581 U.S. ___ (2017).  State law usually determines whether there is a right to payment.  *See Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450-451 (2007).  A creditor holding a claim against the estate of a debtor is entitled to file a proof of claim evidencing its right to payment.  *See* 11 U.S.C. § 501.  Once a proof of claim is filed, the claim is deemed allowed, unless a party in interest objects to the claim.  *See* 11

U.S.C. § 502(a). If an objection to the claim is filed, the court must then determine whether the

claim should be allowed and if so, in what amount. *See* 11 U.S.C. § 502(b).

The Federal Rules of Bankruptcy Procedure set forth certain requirements regarding the

timing of filing, the form, and the content of a proof of claim. One such rule, Federal Rule of

Bankruptcy Procedure 3001(c)(2)(A), provides:

> **(c) Supporting information**
>
> . . .
>
> **(2) Additional requirements in an individual debtor case: sanctions for failure to comply**
>
> In a case in which the debtor is an individual:
>
> (A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

Defendants argue that the proof of claim they filed in Plaintiff's bankruptcy case complies with

Rule 3001's requirements because, as a debt buyer, they do not charge additional interest, costs,

or fees once an account is acquired. As a result, from the debt buyer's perspective, the entire debt

is properly characterized as principal. Therefore, this characterization, and the lack of itemization

of interest, costs, and fees charged by the original creditor, Synchrony Bank, is appropriate.

Plaintiff responds that the proof of claim is inaccurate and misleading and not in compliance with

Rule 3001 because the claim does in fact include interest added to the account prior to Plaintiff's

bankruptcy filing, and therefore even though that interest was charged by the original creditor and

not Defendants, the proof of claim should include an itemization of that interest instead of

characterizing the entire amount of the claim as principal.

Another bankruptcy court in this circuit has recently considered the same issue and I find

Judge Huennekens' analysis persuasive. In *In re Maddux*, 2016 WL 8808176 (Bankr. E.D. Va.

Dec. 1, 2016), the court considered objections to proofs of claim filed by Midland Credit

Management, Inc. in multiple chapter 13 bankruptcy cases. Just as in this case, the proofs of claim

in *Maddux* characterized the entire amount of the claims as principal. Also, the creditors in

*Maddux* did not check the box on the proof of claim indicating that the claims included interest or

other charges. *Id.* at *2. The debtors objected to the claims, arguing, in part, that the pre-petition

interest and fees included in the claims had not been properly disclosed. *Id.*

The *Maddux* court found that the failure to disclose interest and other charges in the proofs

of claim violated Rule 3001(c)(2)(A). The court stated:

> The plain language of Bankruptcy Rule 3001(c)(2)(A) requires an itemized
> statement of interest and other charges to be filed with the proof of claim if a claim
> includes interest, fees, expenses, or other charges in any case in which the debtor is
> an individual. . . . Bankruptcy Rule 3001(c)(2)(A) does not contain an exception
> for any interest, fees, expenses, or other charges that may have been capitalized by
> the holder of a claim. Whereas Bankruptcy Rule 3001(c)(1) includes an explicit
> exception for a claim based upon an Open End or Revolving Consumer Credit
> Agreement, Bankruptcy Rule 3001(c)(2) makes no such exception for credit card
> debt. Midland's contention that it could not comply with the dictates of Bankruptcy
> Rule 3001(c)(2) because it lacked access to information pertaining to the amount
> of interest embedded in the Midland Claims is disingenuous. Even assuming it was
> without the information, the assertion that the Midland Claims included no interest
> was simply incorrect.

*Id.* at *4.

Defendants assert that *Maddux* is distinguishable from the present case. Defendants argue

that in *Maddux*, the main question was whether itemization of principal and other charges,

including interest, was required under Rule 3001 at all. However, Defendants argue that in this

case, the issue is the characterization of the debt as all principal. The Court finds no distinction in

Defendants' argument nor between *Maddux* and this case. *Maddux* also involved claims purchased

by Midland Funding, LLC from Synchrony Bank. As in this case, the claims were purchased after

the bankruptcy cases were filed, and proofs of claim were filed indicating no interest or other

charges were included in the claims. The court's opinion in *Maddux* noted that the debtors were

arguing that the claims "failed to comply with Bankruptcy Rule 3001(c)(2)(A), as they improperly

asserted that no interest or other fees were included in the Midland Claims." *Maddux*, 2016 WL

8808176, at *3. The opinion states that in response, "Midland argued that it was not obligated to

check the box stating that interest, fees, expenses, or other charges were included in its claim, as

any such interest or other charges had been capitalized as new principal. . .. Midland concluded

that . . . it was not required to provide an itemized statement of interest, fees, expenses, or other

charges because any interest, fees, expenses, or other charges had been capitalized into the

principal." *Id.* Thus, it appears that *Maddux* involved substantially similar facts and the same

issue as the present case. The Court finds no distinction between this case and *Maddux*.

The Court agrees with the conclusion in *Maddux*. Rule 3001 is clear that if the claim, or

in other words—the underlying creditor's right to payment, includes interest or other charges that

were incurred pre-petition, an itemization of these amounts must be included with the proof of

claim. The Rule makes no exception for debt buyers and does not say that the way the creditor

treats or characterizes the debt for its own purposes is relevant. Because Defendants' proof of

claim listed the entire amount of the debt as principal, and did not provide an itemization of pre-

petition interest and other charges as required by Rule 3001(c)(2)(A), the proof of claim does not

comply with Rule 3001.

Ms. Blenden's expert report does not convince the Court otherwise. Ms. Blenden's

opinions and conclusions are based on methods of calculating interest and characterizing debts

under other federal regulations. Ms. Blenden arrives at her conclusion that Defendants are not

required to provide an itemization of any pre-petition interest and other charges in their bankruptcy

proof of claim based on accounting provisions of other federal regulations, such as the Truth and

Lending Act and Regulation Z.  But Federal Rule of Bankruptcy Procedure 3001 contains no

exception for debt buyers, it does not adopt these other regulations, and it does not recognize any

particular accounting standard.  It simply requires an itemization of any pre-petition interest and

other charges, regardless of the nature of the claimant.[3]

Finally, in an effort to justify their non-compliance Defendants also attempt to make a

distinction between the language in Rule 3001 and the language in the proof of claim form itself.

The proof of claim form asks, "How much is the claim?" and also asks, "Does this amount include

interest or other charges?"  while Rule 3001 includes only the term "claim" but no reference to

"amount."  However, the difference in the wording between the proof of claim form and Rule 3001

does not lead to an inconsistency.  The proof of claim form asks the claimant to set forth the total

amount of their "claim" and then, referencing the claimant's response to this inquiry, the proof of

claim form asks the claimant to indicate whether this "amount" includes any interest or other

charges.  This choice of words does not render the proof of claim form inconsistent with the

requirements of Rule 3001.  Simply put, a right to payment which includes an interest, and/or cost

component must be reflected in a proof of claim with an itemization of that component.

Defendants' proof of claim does not comply with Rule 3001(c)(2)(A).  Plaintiff's summary

judgment motion is granted in part.

2.  Remedy for Non-Compliance under Rule 3001(c)(2)(D)(i)

Federal Rule of Bankruptcy Procedure 3001(c)(2)(D) provides:

If the holder of a claim fails to provide any information required by this subdivision
(c), the court may, after notice and a hearing, take either or both of the following
actions:

---

[3] As Judge Huennekens recites, opponents of the proposed rule raised the issue of itemizing interest and costs in
proofs of claim filed in connection with credit card debt during the period for comments prior to the adoption of
Rule 3001(c)(2)(A) and the amendment was adopted without any change from its proposed form.  *See Maddux*,
2016 WL 8808176, at *6 n.15; *Report of the Advisory Comm. On Bankr. R. to Standing Committee on R. of Practice
and P.*, at 7-8 (May 27, 2010).

(i)    preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(ii)    award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

For the reasons set forth below, the Court finds that Defendants' violation of Rule 3001 was harmless; thus, no relief is granted to Plaintiff under Rule 3001(c)(2)(D)(i).

Defendants' failure to include an itemization of interest and other charges in its proof of claim was harmless. In her initial schedules, Plaintiff scheduled the debt in an amount only 55 cents less than the amount listed in Defendants' proof of claim. Additionally, in her deposition Plaintiff conceded that she did not dispute the amount of Defendants' claim and that it was not "misleading and deceptive." Plaintiff also stated that she was "worried" about the situation involving Defendants' claim, but did not see a doctor or take any medication and did not actually have any symptoms as a result of her concern regarding the amount of Defendants' claim. Accordingly, no harm occurred as a result of Defendants' failure to comply with Rule 3001. The Court need not address whether Defendants' position was substantially justified, because the exceptions to the general rule, that a claim holder cannot advance its claim based on omitted information, are in the alternative, and no harm resulted in this instance. No relief is granted to Plaintiff under Rule 3001(c)(2)(D)(i). Defendants' motion for summary judgment is granted in part.

3.    Remedy for Non-Compliance under Rule 3001(c)(2)(D)(ii)

Plaintiff's attorney spent time on this matter and the Court finds it appropriate to award Plaintiff attorney's fees under the separate provision of 3001(c)(2)(D)(ii). That provision which stands alone and is dependent only on a finding of the failure to comply with Rule 3001(c) and is

11

not affected by the harmless or substantial justification findings that preclude an award under Rule

3001(c)(2)(D)(i).  In determining an award of attorney fees the Court looks to other Fourth Circuit

case law:

> [I]n calculating an appropriate attorneys' fee award, a [ ] court must first determine
> the lodestar amount (reasonable hourly rate multiplied by hours reasonably
> expended), applying the *Johnson/Barber* factors when making its lodestar
> determination.
>
> This court has summarized the *Johnson* factors to include: (1) the time and labor
> expended; (2) the novelty and difficulty of the questions raised; (3) the skill
> required to properly perform the legal services rendered; (4) the attorney's
> opportunity costs in pressing the instant litigation; (5) the customary fee for like
> work; (6) the attorney's expectations at the outset of the litigation; (7) the time
> limitations imposed by the client or circumstances; (8) the amount in controversy
> and the results obtained; (9) the experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal community in which the suit
> arose; (11) the nature and length of the professional relationship between attorney
> and client; and (12) attorneys' fees awards in similar cases.

*Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008) (citations omitted).  After

consideration of the *Johnson* factors, the Court finds that an award of $3,000.00 in attorney fees is

reasonable in this case.  Plaintiff's counsel indicated at the hearing on Defendants' motion to

dismiss that he had spent approximately four hours initially attempting to understand Defendants'

claim, including attempting to contact Defendants regarding the claim and discussing the claim

with his client.  Additionally, Plaintiff's counsel spent approximately three hours attending the

hearing on the motions for summary judgment.  Finally, the Court will award an additional three

hours in fees for the time Plaintiff's counsel spent preparing the pleadings filed and preparing for

the hearings held in this adversary proceeding.  Accordingly, the Court will recognize 10 hours of

attorney time.  A reasonable hourly rate for a debtor's attorney with similar experience and ability

as Plaintiff's counsel and performing similar work to that which was performed in this case is at

least $300.00.  Accordingly, pursuant to Rule 3001(c)(2)(D)(ii), Plaintiff is awarded $3,000.00 in

attorney fees for the work Plaintiff's counsel performed in this adversary proceeding. Plaintiff's

motion for summary judgment is granted in part.

**<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiff's motion for summary judgment is granted in part

and denied in part, and Defendants' motion for summary judgment is granted in part and denied

in part. This disposes of the adversary proceeding and it is closed.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**05/23/2017**



Entered: 05/24/2017

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina